# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DEWAYNE RICHARDSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 09-01916 (ESH) |
| | ) | |
| UNITED STATES DEPARTMENT | ) | |
| OF JUSTICE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION

Plaintiff brings this action under the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552, against the United States Department of Justice ("DOJ").[1]  This matter is before the Court on the DOJ's motion for summary judgment which, for the reasons discussed below, the Court will grant.

## I.  BACKGROUND

In October 2006, plaintiff submitted a FOIA request to the DOJ, Executive Office for United States Attorneys ("EOUSA").  (Compl. ¶ 2.)  In relevant part the request read:

> I am requesting a copy of the Medical Record from the Washington Hospital Center for patient Glen Dozier which was recorded on or about May 14th, 2003 for multiple stab wounds[.

---

[1]For purposes of the FOIA, the term "agency" includes "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the Executive Branch of the Government . . ., or any independent regulatory agency."  5 U.S.C. § 552(f)(1).  The DOJ, components of which include the Executive Office for United States Attorneys and the Federal Bureau of Investigation, is an executive agency to which the FOIA applies.  The Court considers the DOJ as the proper party defendant.  Accordingly, William G. Stewart, II and Priscilla Jones will be dismissed as parties to this action.

T]his information was entered into evidence in case number F-3134-03 and testimony was taken on Thursday, May 6, 2004 on Direct Examination from Dr. Dennis Wang.

I am also requesting any and all Tangable [sic] Evidence involved in this case, Complainant/Witness Statements, Crime Lab reports, Photo[]s of injuries to complainant, any information of any other Suspects involved in this case [and] Photo[]s of the crime scene.

(Defs.' Mem. of P. & A. in Supp. of their Mot. for Summ. J. ("Defs.' Mem."), Ex. A ("Boseker Decl."), Ex. A (October 11, 2006 FOIA Request), Apr. 7, 2010; *see* Compl. ¶ 11.) The EOUSA acknowledged receipt of the request, which had been assigned a tracking number, FOIA No. 07-341. (Boseker Decl, Ex. B (letter from W.G. Stewart II, Acting Assistant Director, Freedom of Information/Privacy Act Staff, EOUSA).)

Based on the criminal case number plaintiff provided, the EOUSA determined that responsive records likely would be located at the United States Attorney's Office for the District of Columbia ("USAO/DC"). (Boseker Decl. ¶ 6.) The USAO/DC's search yielded records responsive to plaintiff's FOIA request. (*Id.* ¶¶ 18-19.) Relying on FOIA Exemptions 3, 6, 7(C), 7(D), and 7(F), the EOUSA released 10 pages of records in part and withheld 109 pages of records in full. *(See id.* ¶¶ 19-20.) The EOUSA also referred 2 pages of records to the Federal Bureau of Investigation ("FBI") (*id.* ¶ 21), and the FBI withheld both pages in full under FOIA Exemptions 6 and (C). (Defs.' Mem., Ex. C ("Hardy Decl.") ¶ 7.)

## II. DISCUSSION

### A. *Summary Judgment in a FOIA Case*

The Court grants a motion for summary judgment if the pleadings, the discovery and disclosure materials on file, together with any affidavits or declarations, show that there is no

genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[A] material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" on an element of the claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Factual assertions in the moving party's affidavits or declarations may be accepted as true unless the opposing party submits his own affidavits, declarations or documentary evidence to the contrary. *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992).

In a FOIA case, the Court may grant summary judgment based on information provided in an agency's affidavits or declarations when they describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

In opposing a summary judgment motion, a party may not "replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit," *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990), but rather must "set forth specific facts showing that there is a genuine issue for trial," *Liberty Lobby*, 477 U.S. at 248 (citation and internal

quotation marks omitted).  "[A] plaintiff pursuing an action under FOIA must establish that either: (1) the *Vaughn* index does not establish that the documents were properly withheld; (2) the agency has improperly claimed an exemption as a matter of law; or (3) the agency has failed to segregate and disclose all nonexempt material in the requested documents."  *Schoenman v. FBI*, 573 F. Supp. 2d 119, 134 (D.D.C. 2008) (citations omitted).

### B.  The EOUSA's Search for Responsive Records

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)); *see also Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994).  To meet its burden, the agency may submit affidavits or declarations that explain in reasonable detail the scope and method of the agency's search.  *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982).  In the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate an agency's compliance with the FOIA.  *Id.* at 127.  However, if the record "leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper."  *Truitt*, 897 F.2d at 542.

A Supervisory Paralegal Specialist at the USAO/DC acts as its FOIA Coordinator, and in this capacity she receives FOIA requests from the EOUSA "when requested records are identified as likely to be located in the District of Columbia."  (Defs.' Mem., Ex. B ("Jones Decl.") ¶ 1.)  Based on her "review of the official files and records of the USAO-DC and [her] personal knowledge" (*id.* ¶ 2), she determined the office's "computer case tracking system, the Legal Information Network System ('LIONS')" had been searched using plaintiff's name and

criminal case number as search terms.  (*Id.* ¶ 7.)  This LIONS query yielded no responsive records.  (*Id.* ¶ 9.)

The Paralegal Specialist conducted a second search using "a computerized docketing/case management system known as the Master Index System ('MI')[, which] links and indexes key pieces of data from five foundational systems, including LIONS[.]"  (Defs.' Mem., Jones Decl. ¶ 10.)  The MI System permits "searches and queries by name, location, or event on defendants, suspects, witnesses, and other individuals involved in criminal cases, investigations," and other matters.  (*Id.*)  Although the initial search of the MI System using plaintiff's name and criminal case number as search terms yielded no responsive records (*id.* ¶ 11), the declarant states that a subsequent search using only the criminal case number as a search term "revealed a criminal case file which was not identified as related to [plaintiff] but to a different individual."  (*Id.* ¶ 12.)  The declarant further states that this file was retrieved from the Closed File Unit (*id.* ¶¶ 12-13), and the responsive records found in that file were forwarded to the EOUSA for processing.  (*Id.* ¶ 14.)

"Plaintiff assert[s] and contend[s] that the defendant[] never conducted a reasonable search for the responsive records," and he points to the "release [of] responsive documents after the filing of the instant lawsuit [as] evidence of an inadequate search."  (Pl.'s Resp. Mot. in Opp'n to the Defs.' Mot. for Summ. J. ("Pl.'s Opp'n")  at 8, May 14, 2010.)  The timing of an agency's release of records responsive to a FOIA request does not determine whether the agency has complied with its obligations under the FOIA.  "[W]hether the search was completed before or after the requestor files a lawsuit, the remedy available to the plaintiff in a FOIA suit is the same: access to the documents to which he is entitled under the law."  *Tunchez v. U.S. Dep't of*

*Justice*, No. 09-473, 2010 WL 2202506, at *4 (D.D.C. June 3, 2010) (citations omitted).  And if

the Court determines that the agency has, "however belatedly, released all nonexempt material,

[it has] no further judicial function to perform under the FOIA."  *Perry*, 684 F.2d at 125; *see*

*Tijerina v. Walters*, 821 F.2d 789, 799 (D.C. Cir. 1987) ("'[H]owever fitful or delayed the

release of information under the FOIA may be . . . if we are convinced appellees have, however

belatedly, released all nonexempt material, we have no further judicial function to perform under

the FOIA.'") (quoting *Perry*, 684 F.2d at 125).

Based on the EOUSA's supporting declaration, the Court concludes that the agency

conducted an adequate search for records responsive to plaintiff's FOIA request.

## C. Exemptions

An agency that withholds information responsive to a plaintiff's request must justify its

decision in accordance with the exemptions identified in the FOIA.  *See* 5 U.S.C. §§

552(a)(4)(B), 552(b); *Al- Fayed v. CIA*, 254 F.3d 300, 305 (D.C. Cir. 2001).  To this end, an

agency generally submits "affidavits or declarations that describe the documents involved and

justify the non-disclosure in a clear, specific and reasonably detailed manner, and that are not

controverted by either contrary evidence in the record [or] evidence of agency bad faith."

*Voinche v. FBI*, 412 F. Supp. 2d 60, 64-65 (D.D.C.2006) (internal quotation marks and citations

omitted).

### 1. Exemption 3

Exemption 3 protects from disclosure records that are "specifically exempted from

disclosure by statute" provided that such statute either requires a withholding (A) "in such a

manner as to leave no discretion on the issue," or (B) "establishes particular criteria for

withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552 (b)(3). The Federal Rules of Criminal Procedure prohibit disclosure of "matters occurring before [a] grand jury." Fed. R. Crim. P. 6(e)(2); *see In re Motions of Dow Jones & Co., Inc.*, 142 F.3d 496, 498-501 (D.C. Cir. 1998). Rule 6(e) is a statute for purposes of Exemption 3 because Congress affirmatively enacted it. *See Fund for Constitutional Gov't v. Nat'l Archives & Records Serv.*, 656 F.2d 856, 867-68 (D.C. Cir. 1981). In this Circuit, the grand jury exception is limited to material which, if disclosed, would "tend to reveal some secret aspect of the grand jury's investigation, such . . . as the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like." *Senate of P.R. v. U.S. Dep't of Justice*, 823 F.2d 574, 582 (D.C. Cir. 1987).

The EOUSA withholds 69 pages of grand jury transcripts under Exemption 3 in conjunction with Rule 6(e) of the Federal Rules of Criminal Procedure. (Boseker Decl. ¶ 28.) Its declarant asserts that these provisions prohibit "not only the direct revelation of grand jury transcripts, but also the disclosure of information that would reveal the identities of witnesses or jurors, the substance of testimony given before the grand jury, the strategy or direction of the investigation, and any other matter, the disclosure of which would suggest a specific act, thought, or focus of the grand jury's deliberations." (*Id.* ¶ 27.) The declarant avers that "no portions . . . could be released without identifying a third party individual or protecting the confidentiality of the information provided." (*Id.* ¶ 51.)

"[A] grand jury transcript itself epitomizes the sensitive details of the proceedings that Congress sought to keep protected[, and to] disclose a transcript would be to disclose the inner workings of the grand jury." *Sanders v. Obama*, No. 09-912, 2010 WL 3001514, at *5 (D.D.C.

Aug. 2, 2010); *see Fund for Constitutional Gov't*, 656 F.2d at 869 (listing, among other

information "fall[ing] within the broad reach of grand jury secrecy," the "identities of witnesses"

and "the substance of testimony"). Under the circumstances of this case, the EOUSA properly

withholds the grand jury transcripts in their entirety.[2]  *See Sanders*, 2010 WL 3001514, at *5;

*Thompson v. Exec. Office for U.S. Attorneys*, 587 F. Supp. 2d 202, 208 (D.D.C. 2008); *Boyd v.*

*Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 05-1096, 2006 WL 2844912, at *6

(D.D.C. Sept. 29, 2006).

## 2. Exemption 7

### a. Law Enforcement Records

Exemption 7 protects from disclosure "records or information compiled for law

enforcement purposes," but only to the extent that disclosure of such records would cause an

enumerated harm. 5 U.S.C. § 552(b)(7); *see FBI v. Abramson*, 456 U.S. 615, 622 (1982). In

order to withhold materials properly under Exemption 7, an agency must establish that the

records at issue were compiled for law enforcement purposes, and that the material satisfies the

requirements of one of the subparts of Exemption 7. *See Pratt v. Webster*, 673 F.2d 408, 413

(D.C. Cir. 1982). In assessing whether records are compiled for law enforcement purposes, the

"focus is on how and under what circumstances the requested files were compiled, and whether

the files sought relate to anything that can fairly be characterized as an enforcement proceeding."

*Jefferson v. Dep't of Justice*, 284 F.3d 172, 176-77 (D.C. Cir. 2002) (citations and internal

quotations omitted).

---

[2]Because the grand jury transcripts properly are withheld in their entirety under
Exemption 3, the Court need not consider whether any other exemptions apply. *See Simon v.*
*Dep't of Justice*, 980 F.2d 782, 785 (D.C. Cir. 1992).

### i. EOUSA

The EOUSA's declarant explains that plaintiff "was investigated, prosecuted, and convicted of assault with intent to kill using a knife," and that all of the records responsive to his FOIA request "were located by the [USAO/DC] in [plaintiff's] criminal prosecution file." (Boseker Decl. ¶ 23.)  Further, the declarant states that the agency compiled these records "for law enforcement purposes in order to prosecute [plaintiff] for assaulting a third party individual with a knife, with intent to kill."  (*Id.* ¶ 29.)  Based on the agency's declaration and the content of the FOIA request itself, the Court concludes that, with one exception, the records at issue were compiled for law enforcement purposes and thus fall within the scope of Exemption 7. Although certain medical records of a third party were among the records located in the criminal prosecution file,  defendants do not establish that the medical records themselves were compiled for law enforcement purposes.  The Court will address the medical records in its discussion of Exemption 6.

### ii. FBI

The FBI's declarant explains, and plaintiff does not dispute, that "the FBI[] assist[ed] in the investigation of an assault occurring in Washington, D.C.," that the investigation "falls within the law enforcement duties of the FBI," and that the records thus were compiled for law enforcement purposes.  (Hardy Decl. ¶ 18.)  The two pages of records referred by the EOUSA to the FBI, then, are law enforcement records for purposes of Exemption 7.

### b. Plaintiff's Objections

The Court first addresses plaintiff's general objections to the withholding of information under the Exemption 7.  First, plaintiff complains that the 10 pages of records he received

"contained nothing because all the inform[a]tion has been redacted and basically a blanck [sic] sheet of paper[.]" (Pl.'s Opp'n at 2.) As long as the DOJ establishes that it properly redacted information under a recognized FOIA exemption, and that it released all reasonably segregable information, plaintiff's dissatisfaction with the quantity or quality of releasable information is without a remedy.

Second, plaintiff asserts an entitlement to the release of all the information he requested because this information would have been available to him during the criminal proceedings either as *Brady* or as Jencks Act, 18 U.S.C. § 3500, material. (Pl.'s Opp'n at 2, 8.) The FOIA confers no such entitlement. Neither a requester's reason for making his request nor his interest in the requested records is relevant in this context. *See Favish*, 541 U.S. at 172 ("[A]s a general rule, when documents are within FOIA's disclosure provisions, citizens should not be required to explain why they seek the information."); *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 771 (1989) (noting that the FOIA "give[s] any member of the public as much right to disclosure was one with a special interest" in a particular document) (citation and internal quotation marks omitted). Any interest plaintiff may have in using the requested records for purposes of attacking a criminal conviction does not overcome an individual's privacy interests. *See Oguaju v. United States*, 288 F.3d 448, 450 (D.C. Cir. 2002) (finding that a requester's "personal stake in using the requested records to attack his convictions does not count in the calculation of the public interest"), *vacated and remanded*, 541 U.S. 970 (2004), *on remand*, 378 F.3d 1115 (D.C. Cir. 2004) (reaffirming prior decision), *cert. denied*, 544 U.S. 983 (2005); *Mingo v. U.S. Dep't of Justice*, No. 08-2197, 2009 WL 2618129, at *2 (D.D.C. Aug. 24, 2009) (rejecting argument that the agency deliberately withheld exculpatory information in

violation of the Fifth Amendment because the government's constitutional obligation under *Brady v. Maryland*, 373 U.S. 83 (1963), to disclose exculpatory material to a defendant in a criminal proceeding is not coextensive with the agency's statutory obligations under the FOIA); *Cucci v. DEA*, 871 F. Supp. 508, 514 (D.D.C. 1994) (concluding that *Brady* provides no ground for waiving FOIA exemptions). Moreover, plaintiff's argument is misplaced "because a *Brady* violation is a matter appropriately addressed to the court that sentenced [plaintiff], not through a FOIA action in this Court." *Covington v. McLeod*, 646 F. Supp. 2d 66, 71 (D.D.C. 2009) (citation omitted).

### c. Exemption 7(C)

Exemption 7(C) protects from disclosure information in law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552 (b)(7)(C). In determining whether this exemption applies to particular material, the Court must balance the interest in privacy of individuals mentioned in the records against the public interest in disclosure. *See Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993); *Sussman v. United States Marshals Serv.*, 494 F.3d 1106, 1115 (D.C. Cir. 2007) (quoting *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992)). The privacy interest at stake belongs to the individual, not the government agency, *see Reporters Comm.*, 489 U.S. at 763-65; *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989) (noting individual's significant privacy interest "in avoiding the unlimited disclosure of his or her name and address"), and "individuals have a strong interest in not being associated unwarrantedly with alleged criminal activity." *Stern v. FBI*, 737 F.2d 84, 91-92 (D.C. Cir. 1984). "[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be

informed about what their government is up to.'" *Davis*, 968 F.2d at 1282 (quoting *Reporters Comm.*, 489 U.S. at 773). It is the requester's obligation to articulate a public interest sufficient to outweigh an individual's privacy interest, and the public interest must be significant. *See Favish*, 541 U.S. at 172.

### i. EOUSA

Under Exemption 7(C), the EOUSA withholds the identities of and personal information about third parties, among whom are federal special agents, officers of the Metropolitan Police Department ("MPD"), law enforcement technicians, an Assistant United States Attorney, eyewitnesses to an attempted murder, and other third parties. (*See* Boseker Decl. ¶ 32; *see id*., *Vaughn* Index (Doc. Nos. 1-5, 7).) According to the EOUSA's declarant, disclosure of this information "could result in unwanted and even unlawful efforts to gain further access to such persons or to personal information about them[, and] could also lead to harassment, harm, or exposure to unwanted and/or derogatory publicity and inferences arising from their connection to the case." (*Id.* ¶ 30.) The declarant explains that the federal and local law enforcement and support personnel "participated in the investigation and prosecution" of the case against plaintiff. (*Id.* ¶ 32.) Their "[i]ndividual duties and assignments are not public and the publicity that would likely arise from disclosure [of their identities] would seriously impede, if not totally jeopardize, law enforcement effectiveness in subsequent cases, even subjecting [them] to harassment or other harm." (*Id.*) In the EOUSA's view, there is no public interest in the release of this information to outweigh these individuals' privacy interests. (*Id.* ¶ 33.)

### ii. FBI

The two pages of records referred by the EOUSA to the FBI pertain to a third party, Glen

Dozier.  (Hardy Decl., Ex. B (January 28, 2010 letter from D.M. Hardy, Section Chief, Record/Information Dissemination Section, Records Management Division, FBI).)  It is "[t]he FBI's long-standing policy . . . to routinely provide a 'Glomar' or 'neither confirm nor deny the existence of records' response" when a requester provides neither a waiver nor proof of the third party's death.  (*Id.* ¶ 8.)  In this case, although "the FBI acknowledged the existence of responsive information" (*id.*), it "is constrained in the amount of specificity it is able to provide in this public declaration regarding an investigative file of a third party."  (*Id.* ¶ 9.)  After its review of the documents, the FBI determines that "it should withhold the documents in full because revealing any details from these documents would result in the violation of [privacy] rights of numerous third party individuals."  (*Id.*)

The records mention "the names and identifying information of FBI support personnel who were responsible for conducting, supervising, and/or maintaining the investigative activities reported in the investigation.  (*Id.* ¶ 21.)  These personnel do not choose their assignments, and their assignments may require them to "conduct official inquiries into various criminal and national security violation cases," placing them in "contact with all strata of society, conducting searches and making arrests, both of which result in reasonable but nonetheless serious disturbances to people."  (*Id.*)  A person subjected to a search or arrest may "carry a grudge which may last for years," and publicity resulting from the release of that person's "identity in connection with a particular investigation could trigger hostility toward [him]."  *Id.*  The declarant explains that these concerns apply equally to "other federal law enforcement personnel who assisted in this investigation," such that their names are also withheld under Exemption 7(C).  (*Id.* ¶ 22.)  Lastly, the declarant states that there is no public interest to be served by

releasing this information.  (*Id.* ¶¶ 20, 22.)

Redaction of the names of federal and local law enforcement personnel and support staff found in law enforcement records has routinely been upheld.  *See Lesar v. U.S. Dep't of Justice*, 636 F.2d 472, 487 (D.C. Cir. 1980) (finding legitimate interest in concealing the identities of government officials where disclosure "could subject them to annoyance or harassment in either their official or private lives"); *Sellers v. U.S. Dep't of Justice*, 684 F. Supp. 2d 149, 157-60 (D.D.C. 2010) (concluding that the agency properly withheld the identities of FBI Special Agents who testified at plaintiff's criminal trial); *Pray v. Dep't of Justice*, 902 F. Supp. 1, 3 (D.D.C. 1995) (finding that "animosity or grudges toward special agents" resulting from release of information outweighed any possible benefit from disclosure), *aff'd in relevant part*, 1996 WL 734142 (D.C. Cir. Nov. 20, 1996).  And because Exemption 7(C) "takes particular note of the strong interest of individuals, whether they be suspects, witnesses, or investigators, in not being associated unwarrantedly with alleged criminal activity," *Dunkelberger v. U.S. Dep't of Justice*, 906 F.2d 779, 781 (D.C. Cir. 1990) (internal quotation marks omitted), "[t]he D.C. Circuit has consistently held that Exemption 7(C) protects the privacy interests of all persons mentioned in law enforcement records, including investigators, suspects, witnesses, and informants."  *Fischer v. U.S. Dep't of Justice*, 596 F. Supp. 2d 34, 47 (D.D.C. 2009) (citing *Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 661 (D.C. Cir. 2003)).

Accordingly, the EOUSA properly withholds the identities of and personal information about all the third parties mentioned in the records responsive to plaintiff's FOIA request, whether or not these third parties are law enforcement officers or support personnel.  *See, e.g., King v. U.S. Dep't of Justice*, No. 08-1555, 2010 WL 935420, at *4 (D.D.C. Mar. 17, 2010)

(upholding nonproduction of "the names and other identifying information of third parties, including suspects, co-defendants, and confidential sources of information"); *Kurdyukov v. U.S. Coast Guard*, 657 F. Supp. 2d 248, 256 (D.D.C. 2009) (sustaining the withholding of "[t]he names and personal information of the U.S. Coast Guard crew members, which may include addresses, passport numbers and other personal data" (internal quotation marks omitted)). And absent a showing that release of information about the third parties mentioned in the FBI's records furthers the public interest in the FBI's performance of its duties, their privacy interests prevail. The FBI's Glomar response, then, is proper. *See Roth v. U.S. Dep't of Justice*, 656 F. Supp. 2d 153, 166-67 (D.D.C. 2009)

### d. Exemption 7(D)

Exemption 7(D) protects from disclosure those records or information compiled for law enforcement purposes that:

> could reasonably be expected to disclose the identity of a confidential source . . . [who] furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation. . ., information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D). There is no general "presumption that a source is confidential within the meaning of Exemption 7(D) whenever [a] source provides information [to a law enforcement agency] in the course of a criminal investigation." *U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 181 (1993). Rather, a source's confidentiality must be determined on a case-by-case basis, *id*. at 179-80, and a presumption of confidentiality arises only in narrowly defined circumstances. *Id*. at 181 ("For example, when circumstances such as the nature of the crime investigated and the witness' relation to it support an inference of confidentiality, the

Government is entitled to a presumption.").  Moreover, as the District of Columbia Circuit held, "[a] source is confidential within the meaning of [E]xemption 7(D) if the source 'provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred.'"  *Williams v. FBI*, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (quoting *Landano*, 508 U.S. at 170-74).

Under Exemption 7(D), the EOUSA redacts two documents, an  "MPD Arrest/Prosecution Report" and an "Affidavit in Support of Arrest Warrant,"so as not to disclose the identities of and information provided by eyewitnesses to an attempted murder.  *Id.*, *Vaughn* Index (Doc. Nos. 1 and 4).  The EOUSA's declarant explains that Exemption 7(D) is applied "to protect individuals who provided information as confidential sources during a criminal investigation" on the ground that disclosure of their identities "could have a disastrous impact upon the ability to obtain this kind of investigative information in the future, and would have a chilling effect upon the free-flow of information essential to pursue and resolve criminal prosecutions."  (Boseker Decl. ¶ 42.)  He asserts that "eyewitnesses to the attempted murder [committed by plaintiff] could reasonably fear retaliation, which creates the inference of confidentiality in the information they provided to law enforcement authorities."  (*Id.* ¶ 44.)  In addition, the EOUSA withholds a document described as "MPD WAC IIS Investigative Supplemental Report," on which the following statement is printed: "This Report is the Property of the Metropolitan Police Department.  Neither it nor its contents may be disseminated by unauthorized personnel."  (Boseker Decl., *Vaughn* Index (Doc. No. 5) (emphasis omitted).)  The "EOUSA interprets this language as creating confidentiality in the transmission from the MPD to the U.S. for prosecutorial purposes."  (*Id.*)  In both instances, the EOUSA's decision is proper.

The nature of the crime investigated and informant's relation to it are the most important factors in determining whether implied confidentiality exists. *Landano*, 508 U.S. at 179-80; *Quiñon v. Fed. Bureau of Investigation*, 86 F.3d 1222, 1231 (D.C. Cir. 1996); *Coleman v. Fed. Bureau of Investigation*, 13 F. Supp. 2d 75, 82 (D.D.C. 1998) (finding that plaintiff's conviction "of numerous violent crimes" including murder, rape and kidnaping, as well as "the relation of the witnesses thereto is precisely the type that the implied confidentiality exemption expressed in *Landano* is designed to encompass"). In determining whether the source provided information under an implied assurance of confidentiality, the Court considers "whether the violence and risk of retaliation that attend this type of crime warrant an implied grant of confidentiality for such a source." *Mays v. Drug Enforcement Admin.*, 234 F.3d 1324, 1329 (D.C. Cir. 2000). The question has been answered in the affirmative with respect to "the violence and danger that accompany the cocaine trade," *id.*, gang-related murder, *Landano*, 508 U.S. at 179, and other violent acts committed in retaliation for witnesses' cooperation with law enforcement. *See, e.g., Shores v. FBI*, 185 F. Supp. 2d 77, 84 (D.D.C. Feb. 2, 2002) (withholding identities and identifying information of three cooperating witnesses with knowledge of the murder of which plaintiff was convicted, where plaintiff "subsequently attempted to procure the murder of a family member of one of the witnesses"). The Court concurs that eyewitnesses to the attempted murder committed by plaintiff provided information to police under an implied assurance of confidentiality.

The term "source" for purposes of Exemption 7(D) "includes not only individuals such as private citizens and paid informants but also entities such as . . . state and local law enforcement agencies[.]" *Lesar*, 636 F.2d at 491. Accordingly, the Court concludes that the information

provided to the United States Attorney's Office by the MPD is properly withheld under

Exemption 7(D). *See Thomas v. U.S. Dep't of Justice*, 531 F. Supp. 2d 102, 111 (D.D.C. 2008)

(withholding under implied assurance of confidentiality "a Report of Investigation provided by

the Metropolitan Police Department which contains the following statement: This report is the

property of the Metropolitan Police Department.  Neither it nor its contents may be disseminated

to unauthorized personnel."); *Meserve v. U.S. Dep't of Justice*, No. 04-1844, 2006 WL 2366427,

at *10 (D.D.C. Aug. 14, 2006) (citations omitted) (withholding under Exemption 7(D) material

obtained from the State of Ohio where the transmittal contained a statement that the data

contained therein "is only to be used for criminal justice purposes").

### e.  Exemption 7(F)

Insofar as the EOUSA withholds information provided by "eyewitnesses . . . [to] the

attempted murder for which [plaintiff] was prosecuted and convicted" (Boseker Decl. ¶ 48), the

EOUSA relies on both Exemptions 7(D) and 7(F).  (*See id.*, *Vaughn* Index (Doc. Nos. 1, 4 and

5).)  Because the Court already has determined that the identities of and information provided by

eyewitnesses properly is withheld under Exemption 7(D), it need not consider whether

Exemption 7(F) applies.  *See Simon*, 980 F.2d at 785.

### 3.  Exemption 6

Exemption 6 protects "personnel and medical files and similar files the disclosure of

which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. §

552(b)(6).  The term "similar files" is construed broadly and is "intended to cover detailed

Government records on an individual which can be identified as applying to that individual."

*U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982) (citation omitted).  The

18

threshold is "fairly minimal," such that "[a]ll information which 'applies to a particular individual' is covered by Exemption 6, regardless of the type of file in which it is contained." *Wash. Post Co. v. U.S. Dep't of Health & Human Servs.*, 690 F.2d 252, 260 (D.C. Cir. 1982) (quoting *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. at 602). In this way, the "FOIA's protection of personal privacy is not affected by the happenstance of the type of agency record in which personal information is stored." *Id.*; *see N.Y. Times Co. v. Nat'l Aeronautics & Space Admin.*, 920 F.2d 1002, 1004-05 (D.C. Cir. 1990) (en banc) (concluding that Exemption 6 protected disclosure of a tape of voice communications aboard the Challenger space shuttle because "it applies to particular individuals").

Although the EOUSA relies on Exemption 6 in conjunction with Exemption 7(C) in all instances (Boseker Decl. ¶ 39), it appears that Exemption 6 alone applies to 21 pages of records described as "Medical Records of Third Party Individual." (*Id.*, *Vaughn* Index (Doc. No. 6).) There is no dispute that these records are personal, medical or similar files for purposes of Exemption 6, and that they pertain to a particular individual. The EOUSA asserts that "[r]elease of this information . . . constitute[s] a clearly unwarranted invasion of the personal privacy of [the] third party individual[] in a matter that could subject [him] to harassment and harm." (*Id.* ¶ 38.) Nor is there any dispute that this third party has a recognized privacy interest in avoiding disclosure of personal information. *See, e.g., Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 152-53 (D.C. Cir. 2006) (recognizing privacy interests of agency personnel, private individuals, and companies who worked on the approval of the controversial drug mifepristone); *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989) (noting an individual's significant privacy interest "in avoiding the unlimited disclosure of his or her name and

address").

Plaintiff responds that he "is only seeking to obtain the discription [sic] of the wounds of Mr. Dozier" and he has no objection to the redaction of "any other information such as addresses, social security number, telephone number[,] etc." (Pl.'s Opp'n at 7.) He fails to explain how the EOUSA can release the desired information without revealing not only the identity of the third party whose privacy interest is at stake, but also his personal medical information. Plaintiff's proposed concession offers no justification for releasing information properly withheld under Exemption 6.

### D. Segregability

If a record contains information that is exempt from disclosure, any reasonably segregable information must be released after deleting the exempt portions, unless the non-exempt portions are inextricably intertwined with exempt portions. 5 U.S.C. § 552(b); *see Stolt-Nielsen Transp. Group, Ltd. v. United States*, 534 F.3d 728, 734 (D.C. Cir. 2008); *Trans-Pacific Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1026-27 (D.C. Cir. 1999). The Court therefore errs if it "simply approve[s] the withholding of an entire document without entering a finding on segregability, or the lack thereof." *Powell v. U.S. Bureau of Prisons*, 927 F.2d 1239, 1242 n.4 (D.C. Cir. 1991) (quoting *Church of Scientology v. Dep't of the Army*, 611 F.2d 738, 744 (9th Cir. 1979)).

The Court has reviewed the declarations and the *Vaughn* Index submitted in support of the EOUSA's summary judgment motion, and finds that these submissions adequately specify "which portions of the document[s] are disclosable and which are allegedly exempt." *Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974). Accordingly, the

Court concludes that all reasonably segregable information has been released.

### III.  CONCLUSION

For the reasons discussed in this Memorandum Opinion, the EOUSA has conducted an adequate search for records responsive to plaintiff's FOIA request, both the EOUSA and the FBI have demonstrated that information properly was withheld under FOIA Exemptions 3, 6, 7(C) and 7(D), and all reasonably segregable information has been released.  Defendant has demonstrated its compliance with the FOIA and the DOJ's motion for summary judgment will be granted.  An Order is issued separately.


_____/s/_____
ELLEN SEGAL HUVELLE
DATE:  August 13, 2010                United States District Judge